UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 24cr10370 |
| | ) | |
| v. | ) | Violation: |
| | ) | |
| ELIYAHU KAVIAN, | ) | Count One: |
| | ) | Conspiracy to Commit Securities Fraud |
| Defendant | ) | (18 U.S.C. § 371) |
| | ) | |
| | ) | Forfeiture Allegation: |
| | ) | (18 U.S.C. § 981(a)(1)(C) and |
| | ) | 28 U.S.C. § 2461(c)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1.      Defendant ELIYAHU KAVIAN ("E. KAVIAN") lived in New York.

2.      Victim Law Firm A ("Law Firm A") and Victim Law Firm B ("Law Firm B") were two of the largest corporate law firms in the world by revenue.  Each operated in countries around the world.

3.      Nicolo Nourafchan lived in New York and California.  From in or about 2019 to 2021, Nourafchan worked on mergers and acquisitions as a corporate associate at Law Firm A. From in or about 2021 to 2023, Nourafchan worked on mergers and acquisitions as a corporate associate at Law Firm B.

4.      Gavryel Silverstein lived in Florida and was a close friend of Nourafchan.

5.      Simon Fensterszaub ("S. Fensterszaub") lived in New York and Florida, was a brother-in-law of Silverstein, and was a colleague and friend of E. KAVIAN.

6.      Daniel Kavian ("D. Kavian") lived in Florida and was a brother of E. KAVIAN.

7.      Momenta Pharmaceuticals, Inc. ("Momenta") was an American biotechnology company.  At relevant times, Momenta traded on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol MNTA.  On or about August 19, 2020, Momenta and Johnson & Johnson ("J&J") announced a definitive agreement under which J&J agreed to acquire Momenta.  Law Firm A represented Momenta in connection with its acquisition by J&J.  At the time of the announcement of Momenta's acquisition, Nourafchan worked for Law Firm A, and owed duties of loyalty, trust, and confidence to Law Firm A and its clients.

8.      iRobot Corporation ("iRobot") was an American technology company.  At relevant times, iRobot traded on the NASDAQ under the ticker symbol IRBT.  On or about August 5, 2022, iRobot and Amazon.com, Inc. ("Amazon") announced a definitive agreement under which Amazon agreed to acquire iRobot.  Law Firm B represented iRobot in connection with its acquisition by Amazon.  At the time of the announcement of iRobot's acquisition, Nourafchan worked for Law Firm B, and owed duties of loyalty, trust, and confidence to Law Firm B and its clients.

9.      Qualtrics International Inc. ("Qualtrics") was an American experience management company.  At relevant times, Qualtrics traded on the NASDAQ under the ticker symbol XM.  On or about March 13, 2023, Qualtrics announced a definitive agreement under which Silver Lake and Canada Pension Plan Investment Board (collectively, "Silver Lake") agreed to acquire Qualtrics.  Law Firm B represented Qualtrics in connection with its acquisition by Silver Lake.  At the time of the announcement of the acquisition of Qualtrics, Nourafchan worked for Law Firm B and owed duties of loyalty, trust, and confidence to Law Firm B and its clients.

10.      Momentive Global Inc. ("Momentive") was an American company that made cloud-based survey and experience management products.  At relevant times, Momentive traded

on the NASDAQ under the ticker symbol MNTV.  On or about March 13, 2023, Momentive announced a definitive agreement under which a consortium led by Symphony Technology Group (collectively, "STG") agreed to acquire Momentive.  Law Firm B represented an investment bank that acted as financial advisor to Momentive in connection with the acquisition of Momentive by STG.  At the time of the announcement, Nourafchan worked for Law Firm B, and owed duties of loyalty, trust, and confidence to Law Firm B and its clients.

11.     Berkshire Grey, Inc. ("Berkshire") was an American technology company.  At relevant times, Berkshire traded on the NASDAQ under the ticker symbol BGRY.  On or about March 24, 2023, Berkshire and SoftBank Group Corp. ("SoftBank") announced a definitive agreement under which SoftBank agreed to acquire Berkshire.  Law Firm B represented Berkshire in connection with its acquisition by SoftBank.  At the time of the announcement of Berkshire's acquisition, Nourafchan worked for Law Firm B, and owed duties of loyalty, trust, and confidence to Law Firm B and its clients.

Overview of the Conspiracy

12.     Beginning no later than August 2020 and continuing through at least July 2024, E. KAVIAN conspired with Nourafchan, Silverstein, S. Fensterszaub, D. Kavian, and others known and unknown to the U.S. Attorney to obtain material non-public information ("MNPI") about the merger-and-acquisition activity of various publicly-traded companies and to execute securities trades while in possession of that MNPI.  As part of the conspiracy, Nourafchan and others obtained MNPI from corporate insiders, including MNPI that Nourafchan misappropriated from his employers and their clients.  Nourafchan and others then passed that MNPI to individuals whom Nourafchan recruited to join the conspiracy as traders, as well as individuals serving as middlemen, including Silverstein.  Those middlemen then recruited traders and passed the MNPI to those

traders, including S. Fensterszaub, who then agreed to trade securities while in possession of the MNPI and to recruit other traders and middlemen, including E. KAVIAN, to trade while in possession of that MNPI and pass the MNPI to other traders, including D. Kavian.  In exchange for the MNPI from Nourafchan and others, Silverstein, S. Fensterszaub, E. KAVIAN, and other traders agreed to share a portion of their insider trading proceeds with Nourafchan and other co-conspirators, in transactions designed to conceal and disguise the nature, location, source, ownership, and control of those proceeds.

### Object and Purposes of the Conspiracy

13.    The object of the conspiracy was to commit securities fraud by trading in the securities of various companies while in possession of MNPI about those companies.  The principal purposes of the conspiracy were to make money and to conceal the conspirators' actions from others, including regulators and law enforcement.

### Manner and Means of the Conspiracy

14.    Among the manner and means by which E. KAVIAN, Nourafchan, Silverstein, S. Fensterszaub, D. Kavian, and others known and unknown to the U.S. Attorney carried out the conspiracy were the following:

a.    Recruiting attorneys and other corporate insiders, who had access to MNPI about the merger-and-acquisition activity of publicly traded companies;

b.    Misappropriating and sharing that MNPI, in violation of the duties of loyalty, trust, and confidence the attorneys, including Nourafchan, owed to the sources of the MNPI, including the attorneys' employers and their clients;

c.     Recruiting co-conspirators who agreed to trade in the securities of public companies while in possession of MNPI in exchange for an agreement to share in the profits generated by their insider trading;

d.     Trading in the securities of those companies while in possession of MNPI about them;

e.     Transferring proceeds of the illicit trading to corporate insiders and other co-conspirators in cash and other transactions designed to conceal and disguise the nature, location, source, ownership, and control of the insider trading proceeds; and

f.     Taking steps to conceal the conspiracy from regulators and law enforcement, including by communicating about the MNPI in person and via encrypted messaging applications, using coded language, and transferring proceeds in cash.

<u>Overt Acts in Furtherance of the Conspiracy</u>

15.     Beginning no later than in or about August 2020 and continuing through at least July 2024, E. KAVIAN, Nourafchan, Silverstein, S. Fensterszaub, and D. Kavian, together with others known and unknown to the U.S. Attorney, committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

*Momenta*

16.     In or about August 2020, after Nourafchan misappropriated MNPI from Law Firm A and its client Momenta regarding the company's potential acquisition by J&J, and after Silverstein received that MNPI from Nourafchan, Silverstein passed the MNPI to traders, including S. Fensterszaub, pursuant to an agreement under which traders like S. Fensterszaub

would trade in possession of the MNPI, share the proceeds from that trading, and recruit additional traders, like E. KAVIAN, to do the same and to recruit and provide MNPI to additional traders, like D. Kavian.

17.    On or about August 10, 2020, E. KAVIAN purchased Momenta securities while in possession of MNPI regarding the potential acquisition.

18.    On or about August 19, 2020, following the announcement regarding Momenta's acquisition, E. KAVIAN sold Momenta securities he had purchased.

*iRobot*

19.    In or about June and July 2022, after Nourafchan misappropriated MNPI from Law Firm B and its client iRobot regarding the company's potential acquisition by Amazon, and after Silverstein received that MNPI from Nourafchan, Silverstein passed the MNPI to traders, including S. Fensterszaub, pursuant to an agreement under which traders like S. Fensterszaub would trade in possession of the MNPI, share the proceeds from that trading, and recruit additional traders, like E. KAVIAN, to do the same and to recruit and provide MNPI to additional traders, like D. Kavian.

20.    On or about July 14, 2022, E. KAVIAN purchased iRobot securities while in possession of MNPI regarding the potential acquisition.

21.    On or about August 5, 2022, following the announcement regarding iRobot's acquisition, E. KAVIAN sold iRobot securities he had purchased.

*Qualtrics*

22.    In or about February and March 2023, after Nourafchan misappropriated MNPI from Law Firm B and its client Qualtrics regarding the company's potential acquisition by Silver Lake, and after Silverstein received that MNPI from Nourafchan, Silverstein passed the MNPI to

6

traders, including S. Fensterszaub, pursuant to an agreement under which traders like S. Fensterszaub would trade in possession of the MNPI, share the proceeds from that trading, and recruit additional traders, like E. KAVIAN, to do the same and to recruit and provide MNPI to additional traders, like D. Kavian.

23.     On or about February 22, 2023 and March 10, 2023, E. KAVIAN purchased Qualtrics securities while in possession of MNPI regarding the potential acquisition.

24.     On or about March 14, 2023, following the announcement regarding the acquisition of Qualtrics, E. KAVIAN sold Qualtrics securities he had purchased.

*Momentive*

25.     In or about March 2023, after Nourafchan misappropriated MNPI from Law Firm B and its client regarding Momentive's potential acquisition by STG, and after Silverstein received that MNPI from Nourafchan, Silverstein passed the MNPI to traders, including S. Fensterszaub, pursuant to an agreement under which traders like S. Fensterszaub would trade in possession of the MNPI, share the proceeds from that trading, and recruit additional traders, like E. KAVIAN, to do the same and to recruit and provide MNPI to additional traders, like D. Kavian.

26.     On or about March 10, 2023, E. KAVIAN purchased Momentive securities while in possession of MNPI regarding the potential acquisition.

27.     On or about March 14, 2023, following the announcement regarding the acquisition of Momentive, E. KAVIAN sold Momentive securities he had purchased.

*Berkshire*

28.     In or about March 2023, after Nourafchan misappropriated MNPI from Law Firm B and its client regarding Berkshire's potential acquisition by SoftBank, and after Silverstein received that MNPI from Nourafchan, Silverstein passed the MNPI to traders, including S.

Fensterszaub, pursuant to an agreement under which traders like S. Fensterszaub would trade in possession of the MNPI, share the proceeds from that trading, and recruit additional traders, like E. KAVIAN, to do the same and to recruit and provide MNPI to additional traders, like D. Kavian.

29.     On or about March 17, 2023, E. KAVIAN purchased Berkshire securities while in possession of MNPI regarding the potential acquisition.

30.     On or about March 27, 2023, following the announcement regarding the acquisition of Momentive, E. KAVIAN sold Berkshire securities he had purchased.

COUNT ONE
Conspiracy to Commit Securities Fraud
(18 U.S.C. § 371)

The U.S. Attorney charges:

31.    The U.S. Attorney re-alleges and incorporates by reference paragraphs 1 to 30 of this Information.

32.    From in or about August 2020 and continuing through at least July 2024, in the District of Massachusetts and elsewhere, the defendant,

ELIYAHU KAVIAN,

conspired with Nicolo Nourafchan, Gavryel Silverstein, Simon Fensterszaub, Daniel Kavian, and others known and unknown to the U.S. Attorney to commit securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5, to wit: knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly to use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which would and did operate as a fraud and deceit in connection with the purchase and sale of securities.

All in violation of Title 18, United States Code, Section 371.

9

<u>FORFEITURE ALLEGATION</u>
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

33.    Upon conviction of the offense charged in Count One, the defendant,

ELIYAHU KAVIAN,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

34.    If any of the property described in Paragraph 33, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 33 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

JOSHUA S. LEVY
UNITED STATES ATTORNEY

By:    */s/ Ian J. Stearns*
KAITLIN R. O'DONNELL
IAN J. STEARNS
Assistant United States Attorneys